UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ASHLEY E. HARRIS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-00327-Y-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ashley Harris (Harris) seeks judicial review of the Commissioner of Social Security's (Commissioner) decision, which denied her application for a period of disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The United States District Judge referred the case to this court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this court recommends the decision of the Commissioner be reversed and this case be remanded.

### I. Statement of the Case

Harris applied for disability insurance benefits and supplemental security income on May 7, 2009, alleging an onset of disability due to depression, anxiety, seizures, and pregnancy on January 27, 2009. (Tr. 77). After a hearing on August 4, 2010, Administrative Law Judge William Helsper (ALJ) issued an unfavorable ruling on August 24, 2010, finding that Harris was not disabled. (Tr. 81-89). Harris appealed and the Appeals Council remanded the ALJ's original

decision for further consideration on March 9, 2011. (Tr. 91-94). The Appeals Council directed the ALJ to evaluate Harris' mental impairment, give further consideration to Harris' residual functional capacity ("RFC"), obtain supplemental evidence from a vocational expert, and consider Harris' subsequently filed application for benefits dated October 22, 2010. *Id.* Meanwhile, on September 12, 2011, the Commissioner found Harris to be disabled as of August 25, 2010, as a result of her second application (October 22, 2010). (Doc. 13-1). Nevertheless, the ALJ held a new hearing on July 12, 2012, to determine if Harris was disabled between her alleged onset of disability, January 27, 2009, and August 24, 2010. (Tr. 14). The ALJ issued a second unfavorable ruling on July 31, 2012. *Id.*

The ALJ applied the five-step sequential analysis found in 20 C.F.R. § 404.1520(a). First, the ALJ determined that Harris had not engaged in substantial gainful activity since her alleged onset of disability. Next, the ALJ found that Harris suffered from two severe impairments, namely seizures and depression. Third, the ALJ determined that Harris' conditions did not meet or equal a listed impairment. Then, the ALJ concluded that Harris' RFC posed no exertional limitations and that her ability to work is limited only by normal seizure-related precautions. He added that Harris should work with objects and have only superficial contact with people. Next he opined that Harris was capable of detailed but non-complex job duties. Finally, the ALJ determined that Harris could perform her past relevant work as a file clerk. Accordingly, the ALJ ruled that Harris was not disabled. The ALJ did not get to step five—determining whether Harris could perform other substantial gainful activity.

The Appeals Council denied review on March 6, 2014. The ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v.*

*Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review).

## II. Factual Background

Harris was 24 years old on the date of her alleged onset of disability, January 27, 2009. (Tr. 77). On July 21, 2007, Harris presented to the Harris Methodist Hospital emergency room as a result of a seizure at a church function. (Tr. 449). An MRI of her brain revealed no abnormalities and a toxicology screening was negative for illicit drugs. (Tr. 478, 467). In September 2007, Harris saw Dr. Thomas Trese, a neurologist, in reference to her seizures. (Tr. 561). Dr. Trese diagnosed Harris with seizure disorder (possibly psychogenic), anxiety, and depression. (Tr. 561). On February 15, 2009, Harris reported having another seizure at church and again went to the Harris Methodist Hospital emergency room. (Tr. 488). Harris visited Dr. Trese the next day and he started her on Seroquel and Lexapro. (Tr. 557).

On April 13, 2009, Harris, now pregnant, once again presented to the emergency room having suffered a seizure. (Tr. 509). Shortly after, Harris visited Dr. Trese who evaluated her prescriptions and recommended that she seek assistance from Mental Health and Mental Retardation (MHMR) since her seizures are frequently triggered by fear and anxiety. (Tr. 558). Subsequently, on May 7, 2009, Harris applied for disability insurance benefits and supplemental security income, alleging an onset of disability due to depression, anxiety, seizures, and pregnancy. (Tr. 77). On May 16, 2009, Harris was admitted to and spent three days at Harris Methodist Hospital for seizure treatment after being transported to the emergency room by ambulance. (Tr. 524).

On July 8, 2009, Harris underwent a consultative psychological examination by James Jensen, Psy.D. (Tr. 567). Harris complained of seizures, anxiety, depression, sleep problems,

decreased interest, feelings of guilt, poor concentration, fatigue, and suicidal thoughts. *Id.* Dr. Jensen appraised Harris' condition and diagnosed her with major depression, single episode, severe with psychotic features, with postpartum onset. (Tr. 570). Dr. Leela Reddy, M.D., a state agency psychiatrist, completed a Psychiatric Review Technique Form (PRTF) pertaining to Harris' mental impairments on July, 21, 2009. (Tr. 573). Dr. Reddy opined that Harris suffered from Major Depressive Disorder, but that this impairment did not meet listing 12.04. (Tr. 573-585). Dr. Reddy assessed Harris with mild limitations in activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (Tr. 583). Dr. Reddy concluded that Harris has a marked limitation in her ability to understand, remember, and carry out detailed instructions and a moderate limitation in her ability to perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workweek, and perform at a consistent pace without breaks. (Tr. 595, 596). Finally, Dr. Reddy explained that she believed Harris could understand, remember, and carry out simple instructions, get along with co-workers, and appropriately adjust to work setting changes. (Tr. 597). Upon reconsideration, Dr. Charles Lankford, Ph.D., affirmed Dr. Reddy's PRTF and mental RFC assessments. (Tr. 763-764).

Also on July 21, 2009, Dr. Kavitha Reddy, M.D., completed Harris' physical evaluation and concluded that Harris had no exertional limitations, but that she should avoid ladders, ropes, scaffolds, unprotected heights, open flames, and heavy machinery due to pseudoseizure activity. (Tr. 587-591). Dr. Kavitha Reddy included that Harris' allegations are not supported by medical evidence. (Tr. 592). At the reconsideration level, Dr. James Wright, M.D., essentially affirmed Dr. Kavitha Reddy's opinion, substantially differing only on Dr. Wright's belief that Harris' claims are partially supported by medical evidence. (Tr. 770).

4

On December 2, 2009, Harris had her initial evaluation by Tarrant County MHMR. (Tr. 793). At that evaluation, Harris was diagnosed with bipolar disorder and posttraumatic stress disorder (PTSD). *Id.* Harris' continued seizure activity precipitated returns to the emergency room on September, 6, 2009; November 6, 2009; June 14, 2010; and October 3, 2010. (Tr. 608, 914, 902, 872). Harris continued to seek and receive medical treatment beyond August 25, 2010, but it is important to remember that the Commissioner approved her second disability application as of that date. (Doc. 13-1; Pl.'s Reply Br. 1; Def.'s Br. 5). Any discussion of medical treatment beyond that approval date would be immaterial. The relevant time period for this Court's evaluation is January 27, 2009, through August 24, 2010. (Def.'s Br. 5).

### III. Standard of Review

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A) and 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2012). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first

5

four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. Discussion

Harris now appeals the Commissioner's determination on the basis that the ALJ failed to discuss and explain the weight given to the opinions of state agency psychological consultants

Dr. Jim Cox and Dr. Leela Reddy. (Doc. 13 at 22, 27). First, Harris contends that the ALJ ignored Dr. Cox's opinion that she met listing 12.02 when finding that Harris had Borderline Intellectual functioning. (Tr. 1193). Second, Harris alleges that the ALJ failed to acknowledge Dr. Leela Reddy's opinion that Harris could only perform simple tasks, contrary to the ALJ's ultimate finding that Harris could perform detailed but non-complex job tasks. (Doc. 13 at 27).

### A. Harris' first point of error is moot since Dr. Cox's assessment only encompassed August 25, 2010, through July 14, 2011.

Harris protests the ALJ's failure to acknowledge and discuss Dr. Cox's PRTF as part of the ALJ's ruling. In the PTRF, Dr. Cox opined that Harris met listing 12.02 and, as a result, would be disabled. (Tr. 1192, 1204). However, Dr. Cox specifically lists the time period of the assessment as August 25, 2010, through July 14, 2011. (Tr. 1192). The Commissioner argues—and the Court agrees—that Harris' first point of error is moot since the Commissioner recognized that Harris was disabled as of August 25, 2010. (Doc. 14 at 6, 7). The Commissioner concedes that the ALJ failed to incorporate Dr. Cox's opinion into his report, but insists that it is irrelevant to this Court's review. (Doc. 14 at 5). Instead, the Commissioner—acknowledging the disability finding—insists that the relevant time period for this review is January 27, 2009, through August 24, 2010. *Id.* Since Harris offers no other evidence that she met listing 12.02 during the relevant time period, the Court finds this issue moot and will proceed to the second point of error.

### B. The ALJ erred by failing to explain the weight given to Dr. Leela Reddy's Mental PRTF and RFC. Subsequently, the RFC compiled by the ALJ is not supported by substantial evidence.[1]

---

[1] Hereafter all references to Dr. Reddy will be to Dr. Leela Reddy, not Dr. Kavitha Reddy, unless otherwise specified.

As discussed, Dr. Reddy, a state agency psychiatrist, completed a mental evaluation (PRTF and mental RFC) on Harris on July, 21, 2009. (Tr. 573, 595). Notably, Dr. Reddy concluded that Harris had marked limitations in her abilities to understand, remember, and carry out detailed instructions. (Tr. 595). Dr. Reddy opined that Harris could understand, remember, and carry out *simple* instructions, get along with co-workers, and appropriately adjust to work setting changes. (Tr. 597). Upon reconsideration, Dr. Charles Lankford affirmed Dr. Reddy's PRTF and mental RFC assessments. (Tr. 763-764). In contrast, the ALJ decided that Harris retained the functional capacity for all levels of work activity, limited by normal seizure-related precautions, the need to have only superficial contact with others, and the ability to perform detailed but non-complex job tasks. (Tr. 22).

Harris alleges that the ALJ completely failed to explain or give weight to Dr. Reddy's mental RFC concluding that Harris could only perform *simple* job tasks. (Doc. 13 at 29). As a result, Harris maintains that she was prejudiced by the ALJ's erroneous RFC finding that she could perform *detailed but non-complex* job tasks. (Doc. 13 at 28). Harris' contention hinges on the fact that the ALJ, through testimony of the vocational expert (VE), found that Harris could return to her work as a file clerk. (Tr. 22). The VE testified that a file clerk is a semi-skilled position with a Specific Vocational Preparation (SVP) rating of three. (Tr. 50). Harris reiterates that semi-skilled work requires "some skills but does not require doing the more complex duties." 20 C.F.R. § 404.1568(b). Harris argues, by virtue of Dr. Reddy's opinion restricting her to simple job tasks, that she can only perform unskilled work requiring "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). As such, Harris alleges that the ALJ's RFC is unsupported by substantial evidence

and suggests that a court is precluded from inferring that Harris could nevertheless perform unskilled work since the ALJ did not address this possibility with the VE. (Doc. 13 at 30).

The applicable rules regarding the explanation and weight to be given to consultant medical professionals' opinions read:

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Unless a treating source's opinion is given controlling weight, *the administrative law judge must explain in the decision the weight given to the opinions* of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(e)(2)(i) and 404.1527(e)(2)(ii) (emphasis added). The ALJ does not mention Dr. Reddy's PTRF or mental RFC anywhere in his decision. (Tr. 14-23). In fact, the only place Dr. Reddy's evaluations are referenced is in the list of exhibits entitled "Medical Records" appended to the ALJ's decision where they are listed as components "HO 6F" and "HO 8F." (Tr. 28). The Commissioner asserts, correctly, that an ALJ must consider the opinions of state agency physicians, but that the ALJ is not bound by their findings. (Doc.14 at 9); 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i). However, the Commissioner's arguments neglect to include the mandate requiring the ALJ to explain the weight assigned to the opinions of state agency medical personnel. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii). Of course an ALJ need not meet this requirement if controlling weight is given to a treating source's opinion. *Id.* Here, the ALJ did not give controlling weight to the opinion of Dr. Trese, Harris' treating physician, rather, the ALJ questions Dr. Trese's assessments on several occasions and appears to afford his medical opinion little weight. (Tr. 18-19). Accordingly, the ALJ is required

to mention and explain the weight given to Dr. Reddy's medical opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii); SSR 96-6p.

The ALJ was no doubt aware of the requirement that he address Dr. Reddy's opinion, since his failure to do so formed at least part of the basis for the original remand by the Appeals Council. (Tr. 92-93). In its order of remand, the Appeals Council wrote:

> The hearing decision does not contain an evaluation of treating, nontreating, and nonexamining source opinions. The claimant's treating neurologist, Thomas Trese, D.O. opines that the claimant's seizure activity would interfere with adequate job performance. Nonexamining source Kavitha Reddy, M.D. indicates that the claimant should never climb ladders, ropes, or scaffolds. Nonexamining source James Wright, M.D., indicates that the claimant is limited to occasionally climbing ramps or stairs, and can never climb ladders, ropes, or scaffolds. Opinion evidence in the record also indicates that the claimant's mental impairments are severe. Nontreating source James Jensen, Psy.D., indicated that the claimant's report of significant difficulty focusing her attention was supported by mental status examination findings. *Nonexamining source Leela Reedy, M.D., assesses the claimant with mild limitation in social functioning and moderate limitation in concentration, persistence, and pace. Dr. Reddy also indicates that the claimant has marked limitations in understanding, remembering, and carrying out detailed instructions, as well as moderate limitations in performing activities within a schedule; maintaining attendance and punctuality; and completing a normal workday or workweek without intrusion from psychological symptoms.*
>
> Upon remand the Administrative Law Judge will:
>
> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and *provide rationale with specific references to evidence of record in support of assessed limitations*. In doing so, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and *nonexamining source opinions in accordance with provisions 20 CFR 404.1527(f)[2] and 416.927(f)[3] and Social*

---

[2] Now codified at 20 C.F.R. § 404.1527(e).
[3] Now codified at 20 C.F.R. § 416.927(e).

> *Security Ruling 96-6p, and explain the weight given to such opinion evidence.*

(Tr. 92-93) (emphasis added) (internal citations omitted). In his subsequent decision, the ALJ addressed the points instructed by the Appeals Council except Dr. Reddy's PRTF and mental RFC.

In *Hammond v. Barnhart*, the Fifth Circuit concluded that it is error for the ALJ to completely omit the findings of state agency consultants, but that the error is subject to harmless-error review. 124 F. App'x 847, 851 (5th Cir. 2005) (unpublished). In *Hammond*, the court concluded that the ALJ's omissions were harmless error since the omitted opinions seemed "to confirm those of the other medical experts." *Id.* In Harris's case, Dr. Reddy's opinion is not in congruence with any other medical evidence from the relevant time period. The Commissioner argues that the ALJ's decision is bolstered by the opinion of Dr. Thomas Geary, Ph.D., finding that Harris could understand, remember, and carry out detailed but not complex instructions. (Doc. 14 at 9, Tr. 1177). This would be in line with the ALJ's ultimate RFC, however, as the Commissioner highlighted earlier in her brief, the relevant time period for this Court's review is January 27, 2009 through August 24, 2010. (Doc. 14 at 5). Dr. Geary's evaluation occurred on February 18, 2011, and indicated that it was for "current evaluation." (Tr. 1175). Therefore, for the same reason advanced by the Commissioner with regard to Dr. Jim Cox's assessment, Dr. Geary's assessment would be irrelevant and not capable of supporting the ALJ's RFC.[4] Accordingly, there does not appear to be any medical evidence to support the ALJ's RFC assessment that Harris could perform detailed but non-complex instructions. On the contrary, Dr. Lankford's affirmance of Dr. Reddy's assessment at the reconsideration level—also absent from

---

[4] The Commissioner found Harris disabled as of August 25, 2010. (Doc. 14 at 5, Doc. 13-1).

the ALJ's decision—supports Harris' argument and appears to be the only other relevant medical evidence on the issue for the appropriate time period. (Tr. 763).

"The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). District courts "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart,* 399 F.3d 1257 (10th Cir.2005); *Audler v. Astrue,* 501 F.3d 446 (reversing a ALJ's decision on the basis that he failed to explain the reasons for his decision that the claimant did not meet a listing at step three in adequate detail to allow "meaningful appellate review").

Despite this precedence, the Commissioner urges the Court to find that substantial evidence supports the ALJ's RFC finding. (Doc. 14 at 8). However, this argument encompasses only half of the Court's duty upon review. *See Waters v. Barnhart*, 276 F.3d at 718 (explaining the Court's review is limited to whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards). Instead, Harris alleges that the ALJ failed to follow the proper legal standards, as set forth in the Act, the regulations, the rulings, and circuit law.[5] *See Myers v. Apfel,* 238 F.3d 617 (5th Cir. 2001); 42 U.S.C. § 405(b)(1); 20 C.F.R. § 416.927; SSRs 96-2p, 96-5p, and 96-8p. "Should an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand." *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981). Harris insists that she was prejudiced by the ALJ's omission of Dr. Reddy's

---

[5] Doc. 15 at 5.

assessment. (Doc. 15 at 7). She asserts that Dr. Reddy's mental RFC limited her to only simple job tasks which would allow her to perform only unskilled work. *Id.* This would contradict the ALJ's RFC finding that she could perform her past relevant work as a file clerk, a semi-skilled position. *Id.* Harris highlights the fact that the ALJ did not make a Step Five analysis since the ALJ found that she could perform her past relevant work. *Id.*

The Court finds that the ALJ erred by not following the legal standards requiring the ALJ to explain and give weight to the Dr. Reddy's mental RFC. Consequently, the ALJ's RFC is unsupported by relevant medical evidence.

## V. Conclusion

The decision in this case was not reached through application of proper legal standards. The undersigned therefore **RECOMMENDS** that the district court **REVERSE** the Commissioner's decision and **REMAND** Harris' case for further administrative proceedings.[6]

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

---

[6] In her Reply Brief, Harris asks the Court to reverse the Commissioner's final decision and award benefits as of August 25, 1010. (Doc. 15 at 9). Further, Harris asks the Court to remand her case for further administrative proceedings related to the time period from January 27, 2009, through August 24, 2010. Having already been awarded benefits as August 25, 2010, the Court recommends that Harris' request for the award of benefits be denied as moot. Additionally, the Court recommends that Harris' case be remanded for proceedings related to the earlier time period.

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 19th day of August, 2015.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**